TRINA A. HIGGINS, United States Attorney (#7349)
MICHAEL KENNEDY, Assistant United States Attorney (#8759)
Attorneys for the United States of America
111 South Main Street, Suite 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile: (801) 524-3399
email: michael.kennedy@usdoj.gov

_____

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. DARNEL SILVER COLLINS, Defendant. | Case No. 2:24mj48 JCB <br><br> CRIMINAL COMPLAINT <br><br> 49 U.S.C. § 46504 [Interference with a Flight Crew] <br><br> 49 U.S.C. § 46506 and 18 U.S.C. § 113(a)(4) [Assault by Striking, Beating, and Wounding in the Special Aircraft Jurisdiction of The United States] <br><br> Magistrate Judge Jared C. Bennett |

Before a United States Magistrate Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

COUNT 1

49 U.S.C. § 46504
(Interference with a Flight Crew)

On or about January 21, 2024, in the District of Utah and elsewhere,

DARNEL SILVER COLLINS,

the Defendant herein, in the special aircraft jurisdiction of the United States as defined in 49 U.S.C. § 46501(2), did assault and intimidate flight attendants and crew members of an aircraft, thereby interfering with the performance of the duties of the flight attendants and crew members and lessening the ability of the flight attendants and crew members to perform those duties, all in violation of and punishable under 49 U.S.C. § 46504.

COUNT 2

18 U.S.C. § 113(a)(4)
(Assault by Striking, Beating, and Wounding)

On or about January 21, 2024, in the District of Utah and elsewhere,

DARNEL SILVER COLLINS,

the Defendant herein, did, in the special aircraft jurisdiction of the United States as defined in 49 U.S.C. § 46501(2), commit assault by striking, beating and wounding

Passenger 3, all in violation of 49 U.S.C. § 46506(1) and 18 U.S.C. § 113(a)(4), and punishable thereunder.

\* \* \*

Complainant states that this complaint is based on information obtained through investigation consisting of the following:

I, Kylie Ruiz, being first duly sworn, depose and say:

1.  I am a 17-year law enforcement officer and have 15 years' experience as a patrol officer for the Salt Lake City Police Department. I am currently assigned to the Airport Investigations Division and have served with them on multiple occasions over my career. I am also a Deputized Task Force Officer with the Federal Joint Terrorism Task Force and serve as one of two Airport Liaison Agents at the Salt Lake City International Airport. I have taken several investigation courses and completed hundreds of cases resulting in successful convictions both on the patrol and investigations sides. As a federal Task Force Officer, I am authorized to investigate violations of the law of the United States and have authority to execute arrest and search warrants issued under the authority of the United States.

2.  The statements in this affidavit are based, in part, on an investigation conducted by myself and/or communicated to me by other law enforcement

officers, other investigators with knowledge of this investigation, and witnesses who observed the incident. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included every fact known to me concerning this investigation. Rather, I have set forth facts sufficient to establish probable cause for the complaint.

    3. On or about January 21, 2024, an aircraft arrived at Salt Lake City International Airport with reports of an unruly and abusive male passenger. The passenger, who was later identified as DARNEL SILVER COLLINS, a citizen or national of the Netherlands and a resident of the United States, had to be restrained by flight attendants and passengers due to his actions.

    4. Delta Airlines flight #57 originated from Amsterdam Airport Schiphol in the Netherlands and was en route to Salt Lake City, United States of America. Witness statements reported that throughout the flight COLLINS was loud, disruptive, threatening and abusive to other passengers and to crew members.

    5. Approximately 1 hour into the flight, Passenger 1 observed a commotion involving COLLINS, who he recognized from prior observation at the airport, several rows in front of him. Passenger 1 offered to assist with COLLINS. COLLINS was loud and disruptive to passengers around him which included tapping passengers. Throughout the flight, his behavior escalated. During the

flight, he began to follow another passenger, Passenger 2. Passenger 2 requested assistance from the Flight Attendant for him to leave her alone. He continuously touched Passenger 2 and eventually she physically pushed her away from him.

6. COLLINS approached a woman, Passenger 3, as she was coming out of the restroom. He physically grabbed onto Passenger 3's arm and did not release her until another passenger and/or Flight Crew intervened.

7. Approximately 8 passengers were moved from the area around COLLINS seat to avoid further problems. COLLINS got onto his knees and turned around in the seat and began to speak with other passengers. This interaction became aggressive enough at one point that Flight Attendant 1 felt as though the altercation was going to go physical and intervened. Eventually COLLINS was moved to the very back row of the aircraft where flight attendants had to move another approximately 8-10 people to make room for him. Once in the back of the aircraft, COLLINS intentionally spit on Passenger 4, striking at least two persons with saliva.

8. COLLINS approached Flight Attendant 2 in the aft galley area and said "Hey B***h! Are you speaking up now?" Flight Attendant 2 told him to sit back in his seat. She felt unsafe but was grateful there was a cart between them because if not, she felt he could have reached out to her.

9. COLLINS continued to touch passengers as they walked by and even the passenger two rows in front of him.  Due to this continued unwanted touching of other passengers, COLLINS was physically restrained in flexicuffs by flight crew. Collins continued to unbuckle his seatbelt and stand up and cause problems even after being restrained to the point where three seat belt extenders were connected together to put around his mid-section to keep him seated for the remainder of the flight (approximately 2 hours).

10. Flight crew were unable to complete all duties they usually do. They had to check on COLLINS more than other passengers and also had to make sure someone was with him for approximately 9 hours of the 10-hour flight. The Purser was not available to perform his normal duties after approximately halfway through the flight and remained in the back assisting with the care of COLLINS leaving one flight attendant to care for two sections alone. During this time, COLLINS continuously touched and grabbed the arm of the Purser. Many flight

//
//
//
//

attendants reported feeling unsettled, and unsafe.

/s/ *Kylie Ruiz*

KYLIE RUIZ
Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME this _22nd  day of January, 2024.

_____
JARED C. BENNETT
United States Magistrate Judge

APPROVED:

TRINA A. HIGGINS
UNITED STATES ATTORNEY

/s/ *Michael Kennedy*

_____
MICHAEL KENNEDY
Assistant United States Attorney